IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
KENNETH JOHNSON,                )
                                )
            Plaintiff,          )
                                )
      v.                        )       1:19cv834
                                )
MR. SMITH, et al.,              )
                                )
            Defendants.         )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion by Defendants Boggs, Pearman, and Taylor to Dismiss Plaintiff's Complaint with Prejudice (Docket Entry 24) (the "First Dismissal Motion"), and "Motion by Defendant [] Smith to Dismiss Plaintiff's Complaint with Prejudice (Docket Entry 30) (the "Second Dismissal Motion"). Plaintiff filed no response to either Motion. (See Docket Entries dated Dec. 3, 2019, to present.)[1] For the reasons that follow, the

---

[1] By local rule, "[i]f a respondent fails to file a response within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k). Further, "[w]hen a defendant's motion to dismiss a complaint states specific deficiencies that warrant dismissal, and presents supporting legal arguments, it is the plaintiff's obligation to respond substantively to address them. Failure to respond to the defendant's arguments constitutes abandonment of those claims. Any abandoned claims are subject to dismissal with prejudice." Kitchings v. Shelton, Case No. 17-882, 2018 WL 398285, at *6 (D. Md. Jan. 12, 2018) (unpublished) (internal citations omitted). However, the United States Court of Appeals for the Fourth Circuit requires substantive review of even unopposed motions to dismiss.

Court should grant the First Dismissal Motion and should grant in part and deny in part the Second Dismissal Motion.

BACKGROUND

This case began when Plaintiff, a pretrial detainee at the time of Defendants' alleged actions (see Docket Entry 26, ¶¶ 2-3), filed a pro se Complaint alleging deprivations of his constitutional rights under 42 U.S.C. § 1983 (see Docket Entry 2). The Complaint asserts that Defendants violated Plaintiff's "8th Amendment right against cruel [and] unusual punishment" (id. at 6), and his "5th Amendment [right to] due process" (id.), through their use of excessive force and subsequent actions (see id. at 6-9).[2] The Complaint names eight Defendants (see id. at 1-5), to include "Sgt. Taylor" ("Defendant Taylor"), "Sgt. Pearman" ("Defendant Pearman"), "Sgt. Boggs" ("Defendant Boggs"), and "Mr. Smith" ("Defendant Smith") (id. at 1; see also id. at 4-5).[3] It further alleges that, in "approximately July[ or] August 2018" (id. at 6), at the "Guilford County Jail" (id.), a physical altercation

---

See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("Even though [the plaintiffs] did not challenge the motions to dismiss, we note that the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper.").

[2] Citations to Docket Entry pages utilize the CM/ECF footer's pagination.

[3] In quoting Plaintiff's filings, this Recommendation applies standard capitalization conventions for ease of reading.

transpired between Plaintiff and multiple "D-Tac officers," including some Defendants (see id. at 6-9).[4]

According to the Complaint, in "Aug[ust 2018] . . . [at] 7:00 pm [j]ust before shift change" (id. at 7), Plaintiff "was walking to [his] room" (id.), when "D-tac officers needlessly and without provocation assaulted [him] while responding to [Defendant] Taylor being assaulted by another inmate" (id. at 6). More specifically, the Complaint asserts that,

> as the officers came in the block[,] they [saw Plaintiff] and . . . [after] hear[ing ] a code on [the] radio[, ] they beat [Plaintiff] on the floor[. ] CO called out [that there was] still a fight in the room[,] then they final[l]y got [Plaintiff] in handcuffs . . . [and] smashed [his] head against the door[. Plaintiff] tr[i]ed to go[] to [the] hospital[,] but they denied [Plaintiff] that.

(Id. at 7.) As a result, the Complaint asserts that Plaintiff suffered "bruising to [his] face," and that his "left cheek bone sits higher than the other[, his] eye brow was busted[, his] nose was bleeding[,] and they chip[p]ed [two] of [his] teeth." (Id. at 8.) The Complaint further alleges that, after this incident, "[Defendant] Pearman and [Defendant] Boggs denied [Plaintiff's ]rights for a gr[ie]vance form" (id. at 6), and "[Defendant] Taylor

---

[4] Both the First and Second Dismissal Motion "presum[e that] Plaintiff's repeated use of the term "D-Tac[,"] refers to the [Guilford County] Sheriff[ Department]'s 'Detention Tactical Team' at [Guilford County] Jail Central." (Docket Entry 25 at 2 n.2; accord Docket Entry 32 at 2 n.2.)

-3-

. . . denied [Plaintiff] the opportunity to file a grievance" (id. at 9).

Based on those allegations, the Complaint asserts claims against Defendants Taylor and Smith in their individual and official capacities (see id. at 4-5); however, it fails to state in which capacities it asserts claims against Defendants Boggs and Pearman (see id. at 1-11). Finally, the Complaint requests "monetary relief in the form of $100,000.00 compensa[tory damages and] $100,000.00 punitive [damages]." (Id. at 9.)

Defendants Boggs, Pearman, and Taylor filed the First Dismissal Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), because (i) Plaintiff fails to state a valid claim under both the Fifth and Eighth Amendment (Docket Entry 25 at 5), (ii) "Plaintiff fails to state a claim against Defendants in their individual capacities" (id.), (iii) "Plaintiff fails to state a claim against the moving Defendants in their official capacities" (id. at 7), (iv) "Defendants are entitled to public official's immunity" (id. at 9), and (v) "Defendants are entitled to governmental immunity" (id. at 11).[5] Defendant Smith filed the

---

[5] Defendants raised public official's immunity and governmental immunity in the event the Court found that the Complaint alleged any state law claims. (See Docket Entry 25 at 9-11; accord Docket Entry 32 at 9-11). After careful review, the undersigned does not find that the Complaint asserts any state law claims (see generally Docket Entry 2), and, as such, finds public official's immunity and governmental immunity inapplicable in this matter.

-4-

Second Dismissal Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) and made nearly identical arguments. (See Docket Entry 32 at 1-13.)

Following the filing of both the First Dismissal Motion and the Second Dismissal Motion, the Clerk sent Plaintiff a letter advising him of his "right to file a 20-page response in opposition . . . . within 21 days from the date of service of the [Defendants' M]otion [to Dismiss] upon [him]." (Docket Entry 27 at 1; accord Docket Entry 33 at 1.) These letters specifically cautioned Plaintiff that a "failure to respond . . . within the allowed time may cause the [C]ourt to conclude that [Defendants'] contentions are undisputed and/or that [Plaintiff] no longer wish[es] to pursue the matter," as well as that, "unless [Plaintiff] file[s] a response in opposition to [Defendants' M]otion [to Dismiss], it is likely [his] case will be dismissed." (Docket Entry 27 at 1; accord Docket Entry 33 at 1.) Despite these warnings, Plaintiff did not respond to either Dismissal Motion. (See Docket Entries dated Dec. 4, 2019, to present.) Later, the Clerk sent Plaintiff an additional letter advising him that "[n]o response ha[d] been filed to the Defendants [Boggs, Pearman, and Taylor]'s motion to dismiss filed December 3, 2019, and Defendant [] Smith's motion to dismiss filed December 20, 2019," and warned Plaintiff that "the[] motions [would] be referred to the Court . . . for consideration, without a hearing, on the unopposed motion[s]." (Docket Entry 34

-5-

at 1.) That letter further advised that, "[i]f the motion[s were] opposed and excusable neglect c[ould] be shown for having failed to respond, [the Clerk would] submit the explanation and proposed response to the Court." (Id.) Plaintiff still did not act. (See Docket Entries dated Jan. 21, 2020, to present.)

## DISCUSSION

### I. Motion to Dismiss Standards

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); but see Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the Fourth Circuit has "not read *Erickson* to

-6-

Case 1:19-cv-00834-LCB-LPA   Document 37   Filed 07/08/20   Page 6 of 15

undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. See id. (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual recitations, but must provide "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

II. Official Capacity Claims

With respect to local government officials, official capacity liability attaches under Section 1983 only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights,

Tex., 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Notably, an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy. See Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002). "Rather, the official must have 'final authority' over government policy with respect to the action in question" to trigger official capacity liability. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 481-82 (1986)).

Here, the Complaint asserts that Plaintiff suffered injury from the actions of "D-tac officers," as well as the actions (or inactions) of Defendants Boggs, Pearman, and Taylor, but does not include any allegations showing that any Defendant acted pursuant to any official policy or custom of the Guilford County Detention Center. (See generally Docket Entry 2.) Nor does the Complaint allege that any Defendant possesses "final authority" over any such policy that contributed to Plaintiff's alleged injuries. (See id.) Given that Plaintiff proceeds as a pauper (see Docket Entry 5), "the [C]ourt shall dismiss the case at any time if the [C]ourt determines . . . the action . . . fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff has not stated a claim against any named Defendant in their official capacity, and the Court should thus dismiss with prejudice that aspect of Plaintiff's claim(s).

III. Individual Capacity Claims

A. Fifth and Eighth Amendment Claims

As an initial matter, the Complaint argues that Defendants violated Plaintiff's 5th Amendment rights. (See Docket Entry 2 at 6). However, both the Complaint and Dismissal Motions identify all Defendants as local government officials. (See id. at 3-7); see also Docket Entry 25 at 1 (identifying Defendants Taylor, Pearman, and Boggs as employees of the Guilford County Sheriff's Office); Docket Entry 32 at 1 (identifying Defendant Smith as an employee of the Guilford County Sheriff's Office).) Therefore, Plaintiff's medical care and grievance-related claims do not fall under the Fifth Amendment. See Tate v. Smith, No. 1:14cv125, 2017 WL 1843269, at *9 (M.D.N.C. May 5, 2017) (unpublished) (finding that, "the Fourteenth Amendment rather than the Fifth Amendment governs the conduct of state officials") (citing Dusenbery v. United States, 534 U.S. 161, 167 (2002)).

Next, the Complaint identifies Plaintiff as a "[c]onvicted and sentenced state prisoner" (Docket Entry 2 at 3) and argues that Defendants violated Plaintiff's 8th Amendment rights (see id. at 6). By contrast, both the First and Second Dismissal Motion contend that "Plaintiff was a pre-trial detainee [and] not a post-trial convict during the relevant time period referenced [in the] Complaint" (Docket Entry 25 at 5 (parenthesis omitted); accord Docket Entry 32 at 5), and further argue that, because of

-9-

Plaintiff's status as a pretrial detainee during July and August 2018, the time of the alleged incident (see id.), his claims fall under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment.  See Kingsley v. Hendrickson, U.S.    , 135 S. Ct. 2466, 2475 (2015).  However, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner," Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988), and, as discussed below, the Complaint has properly stated a claim against Defendant Smith that can proceed under either the Eighth or the Fourteenth Amendment.

### B. Defendants Pearman, Boggs, and Taylor

The Complaint's core allegations concern "D-tac officers" (see Docket Entry 2 at 6-9), but, as Defendants Pearman, Boggs, and Taylor correctly contend, the Complaint "does not identify . . . Defendants Pearman, Boggs, or Taylor as D-Tac team members . . . [and] allege[s neither] that [Defendants] Pearman, Boggs, or Taylor participated in the assault on [] Plaintiff[] nor that they denied [him] access to medical care" (Docket Entry 25 at 6).  Instead, the Complaint's sole allegation against Defendants Pearman, Boggs, and Taylor focuses upon Plaintiff's access to grievance procedures, in that "[Defendant] Pearman and [Defendant] Boggs denied [Plaintiff's r]ights for a gr[ie]vance form" (Docket Entry 2 at 6), and

-10-

"[Defendant] Taylor . . . denied [Plaintiff] the opportunity to file a grievance" (id. at 9).

The Fourth Circuit, however, has held that "inmates do not have a constitutionally protected right to a grievance procedure, and no liability exists under [Section] 1983 for a prison administrator's response to a grievance or appeal." Brown v. Virginia Beach Sheriff's Office, No. 1:17cv48, 2017 WL 6402987, at *3 (E.D. Va. Mar. 28, 2017) (unpublished) (citing Adams v. Rice, 40 F.2d 72, 75 (4th Cir. 1994)), aff'd in relevant part, 697 F. App'x 161, 162 (4th Cir. 2017) ("[The plaintiff] contended that [the defendant] refused to accept a grievance . . . . [T]his claim concerns access to grievance procedures which . . . is not constitutionally protected."). As a result, Plaintiff's individual capacity claims alleged against Defendants Pearman, Boggs, and Taylor fail as a matter of law.

C. Defendant Smith

As Defendant Smith has observed, on its face, the Complaint "does not list [him] . . . in [its] caption[,] . . . does not allege that [he] took any action[,] . . . does not identify the D-Tac officers involved in the alleged assault . . . [and neither] allege[s that] Defendant [] Smith participated in the assault on [] Plaintiff[] nor that he denied Plaintiff access to medical care." (Docket Entry 32 at 5-6.) Nonetheless, the Complaint identifies Defendant Smith as a "D-Tac officer" (Docket Entry 2 at 4), and

-11-

alleges that "D-tac officers needlessly and without provocation assaulted [Plaintiff]" (id. at 6). More specifically, the Complaint alleges that they "beat [him] on the floor . . . [and] smashed [his] head against the door . . . [and, upon Plaintiff's attempt to] go[] to [the] hospital[,] . . . denied [him] that." (Id. at 7.) Granting Plaintiff the benefit of liberal construction, the Court should conclude that the Complaint identifies Defendant Smith as one of the D-tac officers who assaulted and/or denied medical care to Plaintiff.

The Due Process clause of the Fourteenth Amendment protects pretrial detainees from an officer's use of excessive force. See Kingsley, U.S. at , 135 S. Ct. at 2475. In Kingsley, the Supreme Court observed that "pretrial detainees (unlike convicted prisoners) cannot be punished at all." Id. Accordingly, a pretrial detainee can "prevail [on an excessive force claim] by showing that the [defendant's] actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" Id., U.S. at , 135 S. Ct. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979)). Ultimately, a standard of objective reasonableness applies to a pretrial detainee's excessive force claim. Id., U.S. at , 135 S. Ct. at 2472-73. Further, the Fourth Circuit "ha[s] held that a pretrial detainee makes out a due process violation if he shows 'deliberate indifference to serious

-12-

medical needs' . . . . This is so . . . because no legitimate nonpunitive goal is served by a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent." Martin, 849 F.2d at 871 (quoting Estelle v. Gamble, 429 U.S. 97, 104-06 (1976)) (some internal citations omitted).

Additionally, in the context of prison inmates,

> the Eighth Amendment forbids 'the unnecessary and wanton infliction of pain.' Whitley v. Albers, 475 U.S. 312, 319[ ] (1986). . . . 'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.' Hudson v. McMillian, 503 U.S. 1, 9[ ] (1992). . . . 'This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' Id. [].

Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013). In analyzing a prisoner's claim of unnecessary and wanton infliction of pain, "the nature of the force, rather than the extent of the injury, is the relevant inquiry." Id. at 321.

Accepting the Complaint's factual allegations as true and viewing them in the light most favorable to Plaintiff, it appears that the actions of "D-tac officers," in particular, "beat[ing Plaintiff ] on the floor [and] . . . smash[ing his] head against the door" (Docket Entry 2 at 7), as well as later denying Plaintiff medical care (id.), lacked a "'rational[] relat[ionship] to a legitimate nonpunitive governmental purpose,'" Kingsley,    U.S. at    , 135 S. Ct. at 2473 (quoting Bell, 441 U.S. at 561), or, alternatively, violated the Eighth Amendment proscription against

-13-

"unnecessary and wanton infliction of pain," see Hill 727 F.3d at 317 (internal quotation marks omitted), as the Complaint states that Plaintiff simply had "walk[ed] to his room" (Docket Entry 2 at 4), and that D-tac officers "needlessly and without provocation assaulted [him]" (id. at 6).

Accordingly, the Court should deny the Second Dismissal Motion with respect to Plaintiff's Section 1983 claim against Defendant Smith in his individual capacity.

## CONCLUSION

The Complaint does not state a claim against Defendants Pearmon, Boggs, and/or Taylor in either their official or individual capacities. In addition, the Complaint fails to state a claim against Defendant Smith in his official capacity. However, liberally construed, the Complaint adequately states a claim against Defendant Smith in his individual capacity.

**IT IS THEREFORE RECOMMENDED** that the First Dismissal Motion (Docket Entry 24) be granted and that the claims against Defendants Boggs, Pearman, and Taylor be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**IT IS FURTHER RECOMMENDED** that the Second Dismissal Motion (Docket Entry 30) be granted in part and denied in part in that any official capacity claim against Defendant Smith be dismissed under Federal Rule of Civil Procedure 12(b)(6), but that the individual capacity claim against Defendant Smith be allowed to proceed.

                                        /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                                  **United States Magistrate Judge**

July 8, 2020

-15-

Case 1:19-cv-00834-LCB-LPA   Document 37   Filed 07/08/20   Page 15 of 15